No. 57 June 29, 2012 507

IN THE OREGON TAX COURT
REGULAR DIVISION

DEPARTMENT OF REVENUE,
*Plaintiff,*

*v.*

WASHINGTON FEDERAL, INC.,
and Subsidiaries,
*Defendants.*

(TC 5010)

Plaintiff (the department) appealed from a Magistrate Division decision as to the Oregon statute of limitations application in response to changes or corrections of another state, arguing that its Notices of Deficiency Assessments for certain tax years were not time-barred as was argued by Defendants (taxpayer). Ruling for taxpayer, the court stated that the statute must be read as describing only changes or corrections that more directly result in or cause a change in Oregon tax liability because Oregon has no statutory linkage of its tax base or tax liability to the tax systems of other states, but only to the federal system. As to the construction of the statute regarding the word "because," in the general description of a change in Oregon taxable income or liability, the court ruled that the meaning of that word there indicates a causal element that was formerly described by the phrase "resulting in."

Oral argument on cross-motions for summary judgment was held May 8, 2012, in the courtroom of the Oregon Tax Court, Salem.

Melisse S. Cunningham, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Plaintiff (the department).

Mark K. Buchi, Holland & Hart LLP, Salt Lake City, filed the cross-motion and argued the cause for Defendants (taxpayer) *pro hac vice.*

Decision for Defendants rendered June 29, 2012.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This matter is before the court on cross-motions for summary judgment. Plaintiff Department of Revenue (the department) and Defendants (taxpayer) have stipulated to all material facts. In proceedings in the Magistrate

Division the department made certain arguments that are not renewed in this division of the court. The tax years at issue are 1999, 2000, 2001 and 2002.

## II.   FACTS

The parties have stipulated to the following facts. Taxpayer operates as a federal savings and loan corporation headquartered in the state of Washington. Taxpayer earns income primarily through the making of and repayment of residential mortgage loans. Taxpayer has more than 100 branches in Washington, Idaho, Oregon, Utah, Nevada, Arizona and Texas.

Taxpayer filed its Oregon Corporation Excise Tax return for tax year 1999 on July 16, 2001. It filed its return for tax year 2000 on July 10, 2002, with an amended return filed on approximately June 24, 2005. It filed its return for tax year 2001 on June 12, 2003. It filed its return for tax year 2002 on July 15, 2004.

On September 24, 2008, the department issued Notices of Deficiency to taxpayer for tax years 1999 to 2002. The parties disagree as to whether the Notices of Deficiency were issued within the time allowed by law.

On March 2, 2006, the Idaho State Tax Commission issued a Notice of Deficiency to taxpayer for tax years 1999 to 2002 in the amount of $786,692 in tax, penalty and interest, which amount was later amended to $1,044,296. The department maintains that it received notice of the Idaho Notice of Deficiency on October 2, 2006.

Idaho made the following changes to taxpayer's return: (a) inclusion of Idaho loans that were placed in a Real Estate Mortgage Investment Conduit (REMIC), and income from those loans in the property and sales factors; (b) inclusion of loan servicing fees in the sales factor; (c) inclusion of certain gross proceeds of business assets sold rather than net proceeds, in the sales factor denominator; (d) exclusion of interest income earned from federal obligations from the sales factor denominator; (e) inclusion of interest income earned on obligations not subject to federal

income tax in the sales factor denominator; and (f) exclusion of amounts paid to independent contractors from the payroll factor denominator.

Taxpayer agreed with adjustments (b), (c), (d), (e) and (f), but disagreed with adjustment (a) and the penalties. Taxpayer appealed the Idaho Notice of Deficiency on two grounds. On September 18, 2008, the Idaho District Court entered an order overturning adjustment (a) and the penalties. As a result, the Idaho Tax Commission issued an amended Notice of Deficiency on December 28, 2009, that resulted in no penalties and a refund to taxpayer of $48,043 in tax and interest.

On May 21, 2003, the Arizona Department of Revenue issued a Notice of Proposed Assessment to taxpayer for tax year 1999, which resulted in a refund of $154. The department maintains that it received notice of this Arizona Notice of Proposed Assessment on April 9, 2007.

Arizona made the following changes to taxpayer's return: (a) exclusion of two entities from the combined group; (b) reduction to the add-back for state taxes based on income; (c) reduction in interest income received on federal obligations; (d) disallowance of an interest expense deduction for exempt interest; (e) recharacterization of low income housing partnership income as nonbusiness income; (f) inclusion of gross proceeds of business assets sold, rather than net proceeds, in the sales factor denominator; and (g) exclusion of independent contractor management fees, low income housing partnerships and mortgage-backed securities net gain from other income.

Taxpayer did not dispute these adjustments by the Arizona Department of Revenue. Tax payer does not dispute that the department issued its Notices of Deficiency within two years of receiving notice of the Idaho and Arizona audit adjustments.

### III.   ISSUE

Was the notice of deficiency issued by the department issued within the applicable statute of limitations for issuance of such notices?

## IV.  ANALYSIS

The statute governing this matter is ORS 314.410(3)(b)(A),[1] which, in relevant part provides:

"If the Commissioner of Internal Revenue or other authorized officer of the federal government or an authorized officer of another state's taxing authority makes a change or correction as described in ORS 314.380(2)(a)(A) and, as a result of the change or correction, an assessment of tax or issuance of a refund is permitted under any provision of the Internal Revenue Code or applicable law of the other state, or pursuant to an agreement between the taxpayer and the federal or other state taxing authority that extends the period in which an assessment of federal or other state tax may be made, then notice of a deficiency under any Oregon law imposing tax upon or measured by income for the corresponding tax year may be mailed within two years after the department is notified by the taxpayer or the commissioner or other tax official of the correction, or within the applicable period prescribed in subsections (1) to (3) of this section, whichever period expires later."

ORS 314.410(3)(b)(A) only applies when certain action described in ORS 314.380(2)(a)(A) has occurred. ORS 314.380(2)(a)(A) provides in relevant part:

"The taxpayer shall report to the department any change in the taxpayer's taxable income that is subject to tax by this state or any change in the taxpayer's tax liability paid to or owing this state *because*:

"(A)   The Internal Revenue Service or other competent authority has changed or corrected the amount of a taxpayer's taxable income, tax credit or other amount taken into account in determining the taxpayer's tax liability as reported on a federal income tax return or an income tax return of another state for any taxable year."

(Emphasis added.) Under the foregoing language, changes in Oregon taxable income or Oregon or tax liability must occur "because" the Internal Revenue Service (IRS) or another state made certain types of changes. Only certain types of changes trigger extension of the time limitation provisions of ORS 314.410(3)(b)(A).

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2007.

As a preliminary matter, the court notes that the provisions of the statutes involved in this case apply to individual as well as corporate or other types of taxpayers. Chapter 314 of the Oregon Revised Statutes contains many such rules of general application to all taxpayers. Also, while ORS 314.380(2)(a)(A) speaks of federal or other state changes, this opinion will only address other state changes except where the fact or possibility of a federal change is relevant to the analysis.[2]

It is also important to note the effect of the time limit stated in ORS 314.410 remaining open. If that time for issuance of a notice of deficiency has not expired, the deficiency asserted in Oregon is not limited to the item changed or corrected by another state. Rather, the deficiency in Oregon can be assessed on any basis under Oregon law. ORS 314.410(3)(b)(B).

The position of the department is that the provisions in ORS 314.380(2)(a)(A) apply in any case where another state proposes a change or correction which is one that, *if made by the department*, would change the tax liability of a taxpayer in Oregon. Applying that position in this case, the department points out that the actions of Idaho officials were such that if the same changes were made in Oregon relating to REMIC activity and the sales factor of taxpayer in Oregon, the tax liability of taxpayer in Oregon would be changed.[3]

The position of taxpayer is that the provisions of ORS 314.380(2)(a)(A) must be read as describing only changes or corrections that more directly result in or cause a change in Oregon tax liability. The court understands taxpayer to be arguing that the only "other state" changes or corrections described in ORS 314.380(2)(a)(A) are those that, unless altered by the department, result in a change in Oregon tax liability because of a connecting linkage between Oregon

---

[2] A discussion of the application of the statutes in the case of certain federal changes is found in *Tektronix, Inc. v. Dept. of Rev.*, 20 OTR 468 (2012).

[3] It is only a proposed change that is needed to trigger the extension provisions for the limitations period. ORS 314.380(3)(a). A proposed change could be abandoned by a sister state or defeated by the taxpayer, as occurred here as to certain changes proposed by Idaho. Even in such cases the time period for assessment of deficiencies by Oregon is extended.

substantive law and the substantive law of a sister state.[4] Taxpayer asserts there is no such substantive linkage existing in respect of the changes proposed by sister states here.[5]

It appears to the court that the difference in the positions of the parties comes down to the difference between:

(1)   A change made by another tax authority that, if not altered by the department, would impact, *without more*, the tax liability of a taxpayer in Oregon;[6] and

(2)   A change that would alter the tax liability of a taxpayer *only if affirmatively pursued* by the department.

Illustrations for several situations may help to supply context.

In the case of an individual income taxpayer resident in Oregon but having income from sources in, for example, Illinois, Oregon affords a credit against the tax liability of the individual in Oregon based on the amount of tax paid for the tax year in Illinois. ORS 316.082.[7] If the individual files a return in Illinois showing an income tax due to Illinois of $100X, the individual would, subject to certain exceptions not relevant here, claim a credit against Oregon tax liability for the tax year in the amount of $100X. If the Illinois tax authorities audit the Illinois return and propose to adjust the

---

[4] A change made by either the federal government or another state would never automatically result in a change in Oregon tax liability without the department having the opportunity to satisfy itself as to the facts and, in some cases, law relating to the change. For example, although Oregon adopts federal definitions relating to the measurement of taxable income, nothing in that adoption process limits the right or duty of the department to audit returns and make factual determinations. ORS 317.013(2). This fact does not mean however, as the department suggests, that there cannot be some causal connection required by the provisions of ORS 314.380(2)(a)(A).

[5] The linkage that the department points to in ORS 314.380 and ORS 314.410 is a procedural rather than substantive linkage.

[6] This is taxpayers' position. Note that for the change in the other state to actually affect the Oregon liability, the change would have to be finalized in the other state. That would not mean, however, that such finalization of the change would be required to trigger the limitations extension provisions of ORS 314.380(2)(a)(A).

[7] In some cases the allowance of the credit is reversed for Oregon residents and the residents of states that follow such "reverse credit" rules. ORS 316.082(5); Oregon Administrative Rule (OAR) 150-316.082(2)(1)(a) (examples 1 and 2).

tax liability downward to $75X, the individual would clearly have a reporting obligation under ORS 314.380(2)(a)(A). Why? For the reason that, if the proposed change is made, the tax liability of the individual in Oregon would be greater due to a $25X reduction in the amount of creditable tax paid to Illinois. That proposed change, if it comes to completion, will produce a consequence in Oregon without any affirmative action of the department. The amount of the change will be $25X *unless* the department determines that the liability in Illinois is other than as reported to it. The result in Oregon can be said to "have been produced by" or "be a result of," or "be because of" the change in Illinois tax liability.

Similarly, in the case of an individual, if the IRS determines that the taxable income of the individual is $100X greater than initially reported, that audit change would flow through to the Oregon tax calculation and produce a change in Oregon taxable income unless the department makes a different factual determination or unless Oregon law provides for some modification to the particular item changed by the IRS. ORS 316.022(6); ORS 316.048. The federal change can be said to result in a change in Oregon tax liability in all cases except where the department makes a different factual or legal determination.[8]

In the case of a corporate taxpayer, a similar analysis applies to changes by the IRS as to taxable income. Federal changes in the tax base, or in some federal tax credits, would lead to changes in Oregon taxable income or Oregon liability *unless* the department makes different factual determinations. ORS 317.010(8) and 317.010(10) (as to taxable income); ORS 317.152 (as to a credit provision).

In the case of a corporate taxpayer experiencing changes made by sister states—the situation presented in this case—Oregon has not by statute linked its tax base or tax liability to the tax systems of other states. As to the tax base (that is, Oregon taxable income) Oregon only links to

---

[8] The department frequently has some flexibility in interpreting and applying federal tax statutes. Interestingly, this flexibility goes away when federal courts issue conflicting interpretations of the same statute. In that case the department must follow the legal position taken by the Commissioner of Internal Revenue. *See* ORS 316.032(2); ORS 317.013(2); *Dept. of Rev. v. Marks*, 20 OTR 35 (2009).

the federal system. *Id*. As to tax credits, there is no linkage to the law of other states. Even as to allocation and apportionment of income of corporations operating in two or more states, the governing provisions are derived solely from Oregon law.[9] Unlike the incorporation of federal provisions in Oregon law, there is no incorporation by reference of the law or policy of sister states in any of the elements of determination of corporate tax liability in Oregon.[10]

From the foregoing examples a pattern emerges: as to both individual and corporate taxpayers there is a linkage of Oregon to the federal system for determination of Oregon taxable income. However, as to the law or filings in other states, the court is only aware of one linkage and the department has not identified any other. That one linkage is the credit afforded under the personal income tax statutes to Oregon residents for taxes paid to other states.

One final matter of context is relevant. While this case focuses on linkages between Oregon and other tax regimes in the context of changes or corrections made by the IRS or other states in the audit of returns, an analysis can also proceed from the beginning of the income tax process: the preparation of a return. Here again, all taxpayers—individual and corporate—consult linkages to the federal system in the preparation of their returns. However, the only place in Oregon law identified to the court, and of which the court is aware, where an Oregon taxpayer, individual or

---

[9] Although reference is made in this order to corporations and apportionment, the provisions of Oregon law on apportionment and allocation also apply to individuals doing business in more than one state. See *Lane v. Dept.of Rev.*, 10 OTR 168 (1985).

[10] This linkage only to the federal system is logical and understandable. Individuals and corporations subject to tax in Oregon are in almost all cases subject to tax in the federal system. Linkage to that system, subject to specific modifications desired and enacted by Oregon, produces an efficient approach for taxpayers, their return preparers, and the department. The federal tax system is one codified source of developments in federal tax legislation and interpretations are easily subject to review and are the subject of much commentary and interpretive development. None of this can be said of the tax policies, legislation, or interpretive developments of sister states. It took an amendment to the Oregon Constitution to address concerns that linkage to the federal system would involve unconstitutional delegation of legislative power. Or Const, Art IV, § 32. No such constitutional provision authorizes consideration of the tax law of other states as a basis for determination of Oregon liability.

corporate, must consult the law of sister states is as to individual credits for Oregon residents.[11]

Within this context, the department and taxpayer have the differing views, outlined above, as to the proper construction of ORS 314.380(2)(a)(A). To the task of the construction of that statute the court will now turn.

The parties are not separated about the construction of the statute except as to the word "because," in the general description of a change in Oregon taxable income or liability and the relationship of that to some action taken by a sister state. As to the critical word "because," taxpayer argues that there is a causal element in the meaning of that word. The department counters that the dictionary definition of the word "because" is "for the reason that." (*Citing Webster's Third New Int'l Dictionary* 194 (unabridged ed 2002).)

The department, however, reads the phrase "for the reason that" in a descriptive fashion. Thus, in the view of the department, if Idaho makes a change in calculation of the sales factor and Oregon does so as well, the Oregon change is made for the reason that the Idaho officials made their change. The problem is that this construction of the word "because" converts the definition from "for the reason that" to "for the *same* reason that." Under this construction, a change in the Oregon tax liability that would occur if there was a recalculation of the sales factor occurs "because" Idaho proposed a change in the sales factor.

The approach of the department adds a concept to, and changes, the definition of "because." The addition of the adjective "same" to the definition makes the word "because" one that is descriptive rather than one that is causal. That approach appears to the court to be unwarranted, especially in light of the legislative history of the statutory provisions, a discussion of which follows.

---

[11] Certain information reporting provisions for multistate businesses require such taxpayers to report if there is not uniformity in the positions taken in Oregon and sister states that are members of the Multistate Tax Compact. *See, e.g.*, OAR 150-314.615-(A)(2). These provisions are, however, procedural and informational. They do not substantively link Oregon law to the law of other states.

The concept of changes in Oregon liability occurring because of changes made by federal officials is one that has existed for decades in ORS 314.410 or ORS 314.380, or both. The addition of references to actions of sister states having a trigger effect is relatively recent. Those references were added in 1999. *See* Or Laws 1999, ch 74, §§ 1, 3. A brief review of the state of the law as of 1999 is the beginning point of the analysis.

Prior to 1999, with the only relevant non-Oregon actor being the IRS, the statutes involved here had consistently required that the change made by the IRS be one "resulting in" a change in Oregon tax or net income. *See* ORS 314.410(3) (1969), ORS 314.410(3) (1993). That requirement was contained within the provisions of the statue of limitations statute, ORS 314.410, and not within the statute on duty to report changes made by the IRS, ORS 314.380. The use of a reference within ORS 314.410 to certain kinds of changes made by the IRS that were reportable under ORS 314.380 began with amendments made in 1997. Or Laws, 1997, ch 100, §§ 2, 3. However, that change in statutory placement did not alter the requirement that, to be a predicate, or trigger, for the extension of the statute of limitations on deficiencies, the change made by the IRS had to be one "resulting in" a change in the taxpayer's Oregon taxable income or tax liability. *See* ORS 314.380(2)(a)(1997). The court has no question that the phrase "resulting in" contains a strong causal feature. "Resulting in" is not merely descriptive, it is about cause and effect.

In 1999, the possibility that changes by a sister state could affect reporting responsibilities under ORS 314.380, and therefore the statute of limitations in ORS 314.410, was added to the statutes. Or Laws 1999, ch 74, §§ 1, 3. Two observations regarding the change made in 1999 and the legislative intent regarding that change are relevant. First, as to the change in the statutory language itself, the causality requirement was not changed. ORS 314.380(2)(a), the statute addressing the type of change to be considered under the 1999 amendments, carried over the phrase that had been consistently used for decades: the change by a sister state had to be one "*resulting in* a change in the taxpayer's

taxable income \* \* \* or in the taxpayer's tax liability." ORS 314.380(2)(a) (1999) (emphasis added).

The second observation relates to the legislative history for the 1999 amendments. That legislative history shows that the general context within which the additional returns and actions of sister states was discussed was one animated by a concern for problems *individual* Oregon resident taxpayers could have if they were also filing tax returns in sister states. Thus, in a hearing before the Senate Revenue Committee on January 28, 1999, department witness Susan Browning stated:

> "The principle basically behind it and why we're asking it to be introduced is that we feel clearly that in Oregon the tax policy is residents should be taxed on all their income, but we want to make sure that no one should pay tax on the same income to more than one state.

> "\* \* \* \* \*

> "[A]nd we did have an example that I thought kind of highlights this and explains it back in 1997 where we had an Oregon taxpayer who was also taxable by Idaho on his Idaho income and it had to do with some timber that he sold in Idaho and Idaho had audited just before our three-year period expired, so the results came in after our appeal period expired \* \* \*. And Idaho did assess more tax. So the taxpayer came back and tried to amend the Oregon income tax to reflect the fact that they had to pay taxes on this income to Idaho, as well as they had already done it with Oregon, because we considered [it] part of Oregon income. And then Idaho came in and said 'no, this is actually part of Idaho Income.' So the taxpayer came back and tried to say, 'no, please give me a credit for the amount of taxes I've already paid to Idaho.' But because the timeframe was already closed, we were not able to do that for that person."

The testimony of witness Browning did not address any matters other than taxation in sister states of individual Oregon residents and the problems that exist or could exist because of the credit that Oregon affords to such individual residents.[12] The amendment was described by Ed Waters, an

---

[12] The actual case referred to in the testimony quoted was *DeArmond v. Dept. of Rev.*, 328 Or 60, 968 P2d 1280 (1998).

economist with the Legislative Revenue Officer, as dealing with adjustments and appeals made by other states "if they *affect* Oregon tax." (Emphasis added.) A causation component was thus in the description and the detailed testimony of the witness.

The legislative history of the 1999 amendments contains no general discussion of linkages to sister state law or any other sister state changes that could "affect" the liability of a taxpayer in Oregon. The discussions related solely to tax credits available to individuals and problems that could arise if the amount of tax paid to a sister state changed, after the filing of an Oregon return, by reason of changes or corrections actually or potentially to be made by a sister state. The witnesses' discussion, like the text of the amendment, disclosed that the concern was a "two way street." A correction or change in tax liability in a sister state could lead to a deficiency as well as a refund. Accordingly, the amendments addressed both possibilities—providing for extended refund procedures but also requiring reporting and extended deficiency time lines if the sister state change led to a deficiency in Oregon.[13]

Thus, at the end of the 1999 session of the Oregon Legislature, sister state proposed changes had been addressed, with no indication that the matter extended beyond the issue of credits for those of individual Oregon residents who might be taxable in a sister state. Further, the causation principle remained firmly in place. Only sister state proposed changes "resulting in" a change in Oregon tax counted as the predicate acts that had to be reported and that could extend the statute of limitations.

If this case was governed by the statutes as they stood after the 1999 session, taxpayer would therefore prevail in this litigation. One of the years at issue is, apparently,

---

[13] The court also notes that before discussing the particular 1999 amendment provisions with legislators, the department witness had spoken with the legislators about the concept of residency of individual taxpayers. There is, of course, no concept of residency for corporate taxpayers under Oregon's income tax statutes. Residency and its problems occur only with individuals and is addressed by the allowance of credits by the state of residency.

governed by the law as it stood as such time and as to that year taxpayer is entitled to prevail. As to the later years present in this case, the question is whether changes made by the legislature in the 2001 session altered the legal landscape from where it was at the end of 1999.

The only change made in 2001 to the statutes at issue in this case was that ORS 314.380(2)(a) was divided into two subparagraphs, those being (A) and (B). *See* Or Laws 2001, ch 9, § 4. The division appears to have been necessary because what had been one reporting requirement—that related to changes of corrections made by governments—was extended to add a reporting requirement in the case a taxpayer filed amended returns with the IRS or a sister state or was the subject of an assessment by either of those governments for failure to file a required return. Each of the events in subparagraphs (A) and (B) could be predicate acts relevant to the operation of ORS 314.410.

The subparagraphs contained the description of the acts by other governments or the taxpayer. However, the requirement that such predicate acts bear a certain relationship to Oregon taxable income or tax liability was retained in ORS 314.380(a). The relationship was now stated as a change in Oregon items "because" of the occurrence of some act by another government or a taxpayer. The question therefore becomes whether in describing changes in Oregon items as made "because" of other changes, the legislature intended anything different from the prior rule that the changes of other governments needed to be ones "resulting in" a change in Oregon items.

The legislative history of the 2001 amendments to the statutes contains nothing indicating that the legislature intended anything other than a reformatting of ORS 314.380. In the Senate floor debate, the bill was described as "a little administrative clean-up bill." A department witness told the House Revenue Committee that changes to ORS 314.380 were "clarifying changes" and, indeed , intended to allow more ability of taxpayers to claim refunds in the event

of changes by other governments.[14] The same witness told the Senate Revenue Committee that the changes to ORS 314.380 were to clarify when the department could issue refunds in cases where as delinquent return was filed in a sister state. That was the only discussion of changes relating to sister states and the amendments to ORS 314.380. Additionally, in describing actions of sister states, the department witness described Oregon changes occurring as "a result of" those sister state actions. The description was not, as it now appears in the department's arguments, "changes of the same type as those occurring in other states."

In defense of its position, the department asserts that its position is justified because "[s]upplementing the department's limited resources with the work of *** other state taxing authorities, by using their changes and corrections to trigger the department's review of a taxpayer's Oregon return, is a legitimate legislative purpose." Assuming that the department is correct about legitimacy in the abstract, the department is completely unable to point to any testimony, exhibit or other indication that it either told the legislature that this was the scope of the amendments proposed by the department. Nor is there any indication in the legislative history that any legislator so understood the purpose or effect of the amendments.

Such profound absence of legislative history could in some cases be explained by the fact that the proposed changes to the statutory scheme were so insignificant that no person thought them worth discussion or explanation. However, the position of the department as to the amendments in question can only be correct if the amendments had very significant scope and effect. The amendments would, for the first time, link Oregon tax compliance to the laws and policies of other states. Further, proposed changes, not necessarily finalized changes, would work a significant extension in the statute of limitations on which taxpayers

---

[14] The language to which the court cites is actually testimony that focuses only on federal changes, even though the amendment language contained provisions on refund procedure in the event of either federal or sister state changes or corrections. In the testimony of the department witness there is nothing to suggest that the amendments made any substantive changes regarding the language of ORS 314.380.

could otherwise rely and that extension would be a function of when other state officials got around to their work. Finally, when any one of a myriad of changes occurring in other states were proposed, any change the department desired to make in Oregon would be permitted, even if the Oregon change bore no connection whatsoever to the Oregon deficiency assessment. The court cannot conclude that the legislature, or even the department, intended the amendments to work such changes and yet engaged in no discussion of any change other than the tax credit for individual residents—changes whose limited scope had been the only focus of discussion in the 1999 legislative session.

Additionally, if the court were to accept the department's position on the scope of other state changes that could produce such significant results, myriad problems would be created. What are the contours of the changes that, if made by other states, trigger the extension provisions?

Take the deduction for depreciation, as an example. If the sister state has an exact duplicate of the Oregon provisions on depreciation perhaps no particular problem exists conceptually. But what if Oregon allows depreciation until the cost of an asset is fully recovered and a sister state has a depreciation system in which depreciation cannot go beyond the salvage value of an asset. Is a proposed change in the salvage value made by the sister state considered a change in depreciation? If so, it is arguably a change that, if made by the department, results in a change in Oregon tax. Or is the proposed change only to salvage value, an item not present in the Oregon calculation?

At the hearing on this matter the department was unable to offer an answer to a problem of this type. That is not surprising as the statute itself provides no guidance whatsoever as to the question in the case of other state changes. The court cannot accept the implicit proposition of the department that such matters will have to be addressed by rulemaking or litigation. As to either approach, against what standard would the department or the court act? There is none in either the statute or the legislative history. The lack of a linkage to the tax systems of other states causes confusion as to causality. The only area where such

confusion does not exist, and the only area discussed by or with the legislature, is the allowance of credits to individuals for taxes paid to other states.

Few, if any, such problems exist with respect to the other type of changes and corrections addressed by ORS 314.380 and ORS 314.410: federal changes. This is because the Oregon legislature has explicitly linked the Oregon system to a specific set of federal definitions and provisions—those contained in the Internal Revenue Code. ORS 314.033. The legislature has further stated in particular statutes when, and to what extent, an Oregon taxpayer should depart from the federal system. The legislature has also specified when Oregon will follow federal court or IRS constructions of the federal statutes. ORS 316.032(2); ORS 317.013(2). As a result, if particular federal provisions are involved in the determination of the taxable income of a taxpayer, it is those provisions that are involved, as they are set out in federal law, subject only to the possible effect of Oregon changes in application. The linkage to the federal tax system reduces, if it does not eliminate, confusion as to causality.

Finally, the court is more than a little hesitant to construe the provisions of ORS 314.380 in the fashion suggested by the department because such a construction would place corporate or other business taxpayers doing business both in Oregon and in other states in a distinctly disadvantageous position as compared with businesses doing business only in Oregon. Consider that an entirely domestic Oregon business would have no fear that actions of other states could open an otherwise closed statute of limitations binding on the department. Nor would such a business have to survey audit changes in other states and compare them to Oregon to insure that if they could result in Oregon changes they are reported to Oregon. Businesses, whether founded in Oregon or elsewhere would have these concerns and additional burdens. This difference is the type of differential burden that could raise concerns under the Commerce Clause of the United States Constitution.[15] They also are the

---

[15] For the reigning analysis of the Commerce Clause regarding the ability of the states to tax the activities of firms engaged in interstate commerce, *See, Complete Auto Transit, Inc. v. Brady*, 430 US 274, 279, 51 L Ed 2d 326, 97 S Ct 1076 (1977) (a tax will be sustained against Commerce Clause challenge so long

type of concerns that the court believes would have been discussed with the legislature in connection with the amendments proposed by the department. They were not.

## V.  CONCLUSION

For the foregoing reasons, the motion of taxpayer is granted and the motion of the department is denied. Now, therefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is denied.

---

as the tax "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.").