IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Corporate Tax

| | | |
|---|---|---|
| DARRELL C. BRETT, PC, | ) | |
| fka Darrell C. Brett, MD, PC, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 240601N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION OF DEFAULT** |

On January 8, 2025, the court entered its Order of Default, incorporated herein by reference. Having received Plaintiff's Amended Complaint, the case is ready for decision. The court begins by setting out the facts alleged in Plaintiff's Amended Complaint, which the court accepts as true because, "[u]nder Oregon law, a default judgment establishes all material facts alleged in the complaint." *Rajneesh Foundation v. McGreer*, 303 Or 139, 143, 734 P2d 871 (1987) (reconsidered on other grounds).

## I. STATEMENT OF FACTS

Plaintiff appeals Defendant's Notices of Assessment for the 2018 and 2019 tax years. (Am Compl at 2, 4.) Defendant adjusted Plaintiff's taxable income by $1,130,812 and $1,409,319, respectively, based on federal audit reports that the Internal Revenue Service (IRS) sent to Defendant. (Ptf's Ex A at 11, 15.) Those amounts correspond to amounts Plaintiff paid to Maramount Assurance Company (Maramount) for insurance during those years. (*Id.* at 3; Am Compl at 1.) Plaintiff disputes Defendant's disallowance of those amounts as deductible insurance expenses. (Am Compl at 1.) Plaintiff also disputes substantial understatement penalties associated with tax deficiencies resulting from those disallowances. (*Id.*)

The IRS adjustments for the 2018 and 2019 tax years were made pursuant to a settlement agreement the IRS offered to Plaintiff rather than as the result of its final conclusions at audit. (*See* Ptf's Ex A at 3.)  Under the agreement, Plaintiff's "claimed income tax deductions for premiums and other expenses related to the captive insurance policies would be disallowed," and Maramount "would agree either to liquidate or to cease operations as a captive insurer and pay tax as if dividends had been paid and recontributed." (*Id.*)  In exchange, no tax would be imposed on Maramount for premiums paid, and "a substantially reduced penalty would apply." (*Id.*)  Plaintiff "did not agree with the substance of the IRS's disallowance" of deductions for premiums but agreed to the settlement to avoid additional expenses and risk of an unfavorable IRS or court decision resulting in double taxation and associated penalties.  (*Id.*)

Defendant's explanations of adjustments state that they are based on an IRS audit report. (*See* Ptf's Ex A at 11, 15.)  The explanations contain no discussion of whether Plaintiff's payments to Maramount were deductible business expenses.  (*Id.*)

Plaintiff claims that payments made to Maramount for insurance were erroneously disallowed by Defendant.  (Am Compl at 1; Ptf's Ex A at 2.)  On December 30, 2013, Maramount was incorporated as a pure captive insurer pursuant to Oregon Laws 2012, chapter 84. (Ptf's Ex A at 2.)  For the tax years at issue, Maramount was "a validly-organized insurance company licensed and regulated by the state of Oregon" and Plaintiff paid insurance premiums to Maramount for "valid business risks" that were "not duplicative of commercial insurance also paid[.]"  (*Id.* at 5.)  Maramount was a "brother-sister captive insurance company" but premiums paid to Maramount were not loaned back to Plaintiff, as has been the case in some captive insurance arrangements.  (*Id.* at 4-5.)  Maramount's reinsurance pool also contained no such circular flow of funds.  (*Id.* at 5.)

In support of its general assertion that payments made to Maramount were for the purchase of insurance, Plaintiff alleges four additional facts. (Ptf's Ex A at 4-5.) First, in exchange for premiums paid to Maramount, Plaintiff "no longer bore the risk of the various casualties" because, "for example, when a litigation expense arose, [Plaintiff] did not bear the loss, Maramount did." (*Id.* at 4.) Second, Maramount distributed its own risk by participating in a reinsurance pool. (*Id.*) In doing so, Maramount accepted "other, third party, unrelated risk" and obligated itself to pay a portion of claims from the pool's other insureds, in exchange for entitlement to reimbursement for its own claims. (*Id.* at 4-5.) Third, Plaintiff's transactions with Maramount were for coverage of "ordinary insurable business hazards: loss of key individual, professional liability, intellectual property infringement, litigation expense, employment practices, general commercial liability, crime, directors and officers liability, contingent business interruption, and breach of data expenses." (*Id.* at 5.) Fourth, Maramount was an Oregon-licensed insurance company, was adequately capitalized, had valid and binding policies, consulted with an actuary to set premium rates, and paid claims. (*Id.*)

## II. ANALYSIS

The issue presented is whether any bar exists to canceling Defendant's assessments of tax, interest, and penalties for the 2018 and 2019 tax years. *See Ulmschneider v. Dept. of Rev.*, TC-MD 070836D, 2008 WL 352308 at *1 (Or Tax M Div Jan 23, 2008) (describing issue on default as whether "a bar exists in granting Plaintiff's request that Defendant's assessments be canceled"). "[A] default judgment must be supported by the pleadings." *Rajneesh*, 303 Or at 147.[1] So, while the court accepts factual allegations as set forth in the Amended Complaint as

---

[1] Ordinarily, the plaintiff bears the burden of proof by a preponderance of the evidence. *See* ORS 305.427 (2017). Upon Defendant's default, however, "[t]he court must rely on the information provided by Plaintiff because Defendant has not responded." *Ulmschneider*, 2008 WL 352308 at *1. Oregon has a "longstanding policy disfavoring default judgments[,]" reflecting a preference to resolve litigation on the merits. *Wells Fargo Bank, N.A.*

true, it must still determine whether they constitute a valid claim for relief. *See id.* at 142 (stating "a default establishes only the truth of the factual allegations contained in the complaint and does not admit that the facts alleged constitute a valid claim for relief"). The court first considers whether the IRS adjustments create a bar to Plaintiff's requested relief. The court then considers whether any bar exists to finding that Plaintiff's payments to Maramount were for bona fide insurance, which may be deducted as ordinary and necessary business expenses. For the following reasons, the court concludes that no such bar exists.

A.    *IRS Adjustments*

The court begins by considering whether the IRS adjustments, themselves, create a bar to Plaintiff's requested relief. Although Oregon incorporates the federal definition of taxable income, Defendant is not necessarily bound by IRS adjustments because it may draw its own factual conclusions. *See Dept. of Rev. v. Washington Federal, Inc.*, 20 OTR 507, 513 (2012) (stating that "[f]ederal changes in the tax base [of a corporate taxpayer] * * * would lead to changes in Oregon taxable income or Oregon liability *unless* the department makes different factual determinations") (emphasis in original). Defendant's factual determinations here—if any—are unknown, but this does not change the fact that the IRS adjustments are not necessarily binding on Defendant. Therefore, the IRS adjustments do not create a bar to granting Plaintiff's requested relief.

B.    *Defining Insurance for Oregon Corporate Excise Tax Purposes*

Having determined that the IRS adjustments do not, themselves, create a bar against granting relief, the court turns to the question of whether Oregon's definition of insurance for

*v. Jasper*, 289 Or App 610, 616, 411 P3d 388 (2017). The absence of an adversarial proceeding thus induces caution in rendering default judgment.

state tax purposes bars such a judgment. Oregon adopts those portions of the IRC that pertain to the determination of taxable income of corporate taxpayers. ORS 317.013(1).[2] Those portions of the IRC, together with other federal laws, "have full force and effect * * * unless modified by other provisions" of Oregon's Corporation Excise Tax Law. *Id.* "Insofar as is practicable * * * the Department of Revenue shall apply and follow the administrative and judicial interpretations of the federal income tax law." ORS 317.013(2).

Under the IRC, deductions shall be allowed for all ordinary and necessary expenses incurred during a taxable year in carrying on a trade or business. IRC § 162(a). Insurance premiums against fire, storm, theft, accident, or other similar losses are deductible business expenses. Treas Reg § 1.162-1(a). Amounts reserved by taxpayers for self-insurance are not deductible. *Harper Group & Includible Subsidiaries v. Comm'r*, 96 TC 45, 46 (1991), *aff'd sub nom. Harper Group v. Comm'r*, 979 F2d 1341 (9th Cir 1992). Captive insurance transactions "straddle the fence between ordinary insurance and self-insurance." *Id.* Depending on the facts of a given arrangement, premiums paid to captive insurers may be deductible. *See, e.g.*, *Rent-A-Center, Inc. v. Comm'r,* 142 TC 1, 13 (2014) (holding that taxpayer's payments to captive insurer were deductible insurance expenses).

The IRC does not define "insurance," so federal courts use four criteria to determine the existence of insurance for federal tax purposes: risk shifting, risk distribution, insurable risk, and commonly accepted notions of insurance. *Rent-A-Center, Inc.*, 142 TC at 1, 13. The United States Supreme Court describes the first two criteria—risk shifting and risk distribution—as "essential" elements of an insurance contract. *Helvering v. Le Gierse*, 312 US 531, 539, 61 S Ct 646, 85 L Ed 996 (1941). The United States Court of Appeals for the Ninth Circuit identified the

---

[2] The court's references to the Oregon Revised Statues (ORS) are to 2017.

third and fourth criteria—insurable risk and commonly accepted notions of insurance—as derived from principles motivating *Le Gierse* and supported by prudential reflection. *AMERCO, Inc. v. Comm'r*, 979 F2d 162, 165, 92-2 US Tax Cas ¶ 50,571 (9th Cir 1992) (citing the case's trial court opinion, *AMERCO*, 96 TC at 38). So, while risk shifting and risk distribution are required elements of insurance for federal income tax purposes, insurable risk and commonly accepted notions of insurance are "additional factors" that could "be important at times." *Id*. The court addresses each criterion in turn.

    1.    *Risk Shifting*

Risk shifting occurs when an insurance agreement removes the risk of economic loss from the insured party and shifts it to the insurer. *Rent-A-Center*, 142 TC at 16. The Ninth Circuit examines "the economic consequences of the captive insurance arrangement to the 'insured' party to see if that party has, in fact, shifted the risk" and, in doing so, "look[s] only to the insured's assets * * * to determine whether it has divested itself of the adverse economic consequences of a covered * * * claim." *Clougherty Packing Co. v. Comm'r*, 811 F2d 1297, 1305, 87-1 US Tax Cas ¶ 9,204 (9th Cir 1987).

Risk shifting is present here because, by purchasing an insurance policy from Maramount, Plaintiff no longer bore the risk of covered casualties. As an example of that risk shifting, Maramount covered Plaintiff's claim for litigation expenses. Plaintiff and Maramount have a sibling relationship, which federal courts have acknowledged may shift risk. *See, e.g., Rent-A-Center*, 142 TC at 20-21.[3] Plaintiff was relieved of its risk associated with various potential casualties, so the risk shifting prong is met.

---

[3] Courts employ a "balance sheet and net worth analysis" to determine risk shifting in brother-sister relationships. *Rent-A-Center*, 142 TC at 21. Such analysis is beyond the scope of this default decision.

2. *Risk Distribution*

The court now turns to the other required element of insurance: risk distribution. Under the federal analytical framework, "[r]isk distribution occurs when an insurer pools a large enough collection of unrelated risks (*i.e.*, risks that are generally unaffected by the same event or circumstance)" so that the insurer's risk is diversified and thus reduced. *Rent-A-Center*, 142 TC at 24. The question of how many unrelated risks must be pooled to satisfy the risk distribution prong for federal income tax purposes does not have a clear answer. *See Avrahami v. Comm'r*, 149 TC 144, 182-83 (raising the question of what is "large enough" and concluding that insuring only three or four sibling companies through seven types of policies did not adequately distribute risk); *see also Harper*, 96 TC at 59-60 (noting that 50 percent of a captive insurer's business being comprised of unrelated insureds' risk satisfies this prong, but less than 2 percent does not, and holding that 30 percent does).

Maramount participated in a reinsurance pool to distribute its risk, accepting unrelated, third-party risks. Plaintiff provided limited additional information concerning Maramount's risk distribution, such as the number and type of unrelated policies or the percentage of Maramount's business comprised of unrelated (or related) insureds' risk. But, in the posture of default, the lack of such additional information is not a bar to relief because the court received no evidence that Maramount's insurance pool was insufficient and because Plaintiff affirmatively alleged that Maramount distributed risk through participation in a reinsurance pool of unrelated risks.

3. *Insurable Risk*

Having addressed the two required elements of insurance, the court turns to the other potentially relevant—but nonessential—factors. Insurable risk exists when an insured party faces a hazard, and an insurer accepts a premium in exchange for agreeing to perform some act if

or when the insured experiences a loss event in connection with the hazard. *AMERCO &*
*Subsidiaries v. Comm'r*, 96 TC 18, 38 (1991), *aff'd*, 979 F2d 162 (9th Cir 1992). Insurable risk
is present here because Plaintiff faced the hazards related to loss of a key individual, professional
liability, intellectual property infringement, incurring litigation expense, employment practices,
general commercial liability, crime, directors and officers liability, contingent business
interruption, and breach of data. Those risks were transferred to Maramount upon Plaintiff's
payment of premiums. Based on the presence of insurable risk, the court finds no bar to granting
Plaintiff's requested relief under this prong of the analysis.

4.      *Commonly Accepted Notions of Insurance*

Finally, the court considers whether Plaintiff's arrangement with Maramount is consistent
with commonly accepted notions of insurance. Federal courts look for numerous factors in
analyzing whether commonly accepted notions of insurance are present. *Avrahami*, 149 TC at
191. These include "whether the [insurer] was organized, operated, and regulated as an
insurance company; whether the insurer was adequately capitalized; whether the policies were
valid and binding; whether the premiums were reasonable and the result of an arm's-length
transaction; and whether claims were paid." *Id*.

The arrangement here comports with some commonly accepted notions of insurance
because Oregon regulated and licensed Maramount as an insurer.[4] Maramount operated as an
insurance company because its policies were valid and binding, it consulted an actuary in
determining its premiums, and a professional captive insurance manager facilitated the review,

---

[4] Absent specific federal legislation indicating otherwise, Congress delegates insurance regulation to the states. 15 USC § 1012; *see also AMERCO & Subsidiaries v. Comm'r*, 96 TC 18, 42 (1991), *aff'd sub nom. AMERCO, Inc. v. Comm'r*, 979 F2d 162, 92-2 US Tax Cas ¶ 50,534 (9th Cir 1992) (noting "Congress has delegated to the states the exclusive authority (subject to exception) to regulate the business of insurance").

processing, and payment of claims. And, as an additional relevant fact here, Plaintiff submitted a claim that Maramount paid. Given the foregoing facts, the court concludes that, within this prong of the analysis, there is no bar to granting Plaintiff's requested relief.

## III. CONCLUSION

Upon careful consideration, the court finds that the facts alleged in Plaintiff's Amended Complaint support Plaintiff's requested relief and the court finds no bar under applicable law to granting Plaintiff's requested relief. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted for the 2018 and 2019 tax years.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on March 19, 2025.*